UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**FLORIDA ROCK PROPERTIES, INC.**
200 W. Forsyth Street, 7th Floor
Jacksonville, Florida 32202

**Plaintiff,**

v.

**JEMAL'S BUZZARDS POINT L.L.C.**
SERVE: 702 H. St. NW, Suite 400
Washington, D.C. 20001

and

**HESS CORPORATION**
SERVE: CT Corporation System
1015 15th Street NW
Suite 1000
Washington, DC 20005

**Defendants.**

Civil Action No.: __________

**COMPLAINT**

Plaintiff Florida Rock Properties, Inc., a Florida corporation ("FRP"), sues Defendants, Jemal's Buzzards Point L.L.C., a District of Columbia limited liability company ("Jemal"), and Hess Corporation, a Delaware corporation ("Hess Corporation") (collectively, Jemal and Hess Corporation are the "Defendants"), and alleges:

**Nature of the Claims**

1. FRP owns and is developing a parcel of real estate generally located at 25 Potomac Avenue S.E. in the District of Columbia (the "FRP Property"). The FRP

Property is immediately north of the Anacostia River, immediately south of Potomac Avenue and Nationals Park, and immediately northeast of the Fredrick Douglas Memorial Bridge and 1620 South Capitol Street, S.E. (the "Fuel Terminal Property").

2. The Defendants are the present and former owners and operators of the Fuel Terminal Property.

3. In connection with its development of the FRP Property, FRP has determined that soil and groundwater at the FRP Property are contaminated by regulated substances (as defined in the UST Act), including petroleum products and their chemical components (collectively, the "Contaminants").

4. The levels of Contaminants at the FRP Property exceed the cleanup standards established by the District of Columbia Department of Environment ("DDOE") and other governmental entities.

5. Forensic evidence demonstrates the Contaminants at the FRP Property migrated to the FRP Property from the Fuel Terminal Property.

6. FRP seeks a judgment against the Defendants for (i) damages under common law theories of private nuisance, negligence, and trespass to real property and (ii) injunctive relief under the Underground Storage Tank Management Act (D.C. Code §§ 8-113.01, *et seq*. (the "UST Act")).

**Parties and Jurisdiction**

7. FRP is a Florida corporation, with its principal place of business at 200 West Forsyth Street in Jacksonville, Florida.

8. Jemal is a District of Columbia limited liability company, with its principal place of business at 702 H St. NW, Suite 400, in Washington, D.C.

9. Upon information and belief, each of the members in Jemal is a citizen of the District of Columbia.

10. Upon information and belief, none of the members of Jemal is a citizen of Florida.

11. Hess Corporation is a Delaware corporation, with its principal place of business at 1185 Avenue of the Americas in New York, New York.

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because diversity of citizenship exists between the plaintiff and defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13. This Court has personal jurisdiction over the Defendants because this action arises from Defendants having an interest in, using, and possessing real property in the District of Columbia.

14. Venue is proper in this district (i) under 28 U.S.C. § 1391(b)(1) because Jemal is considered a resident of the District of Columbia, and (ii) under 28 U.S.C. § 1391(b)(2) because the events and omissions giving rise to FRP's claims occurred and the property that is the subject of this action is situated in the District of Columbia.

15. FRP has retained the undersigned to represent FRP in this action and has agreed to pay reasonable attorneys' fees for their services.

16. All conditions precedent to this action have been satisfied, occurred in fact or by operation of law, or been waived.

**History of the Fuel Terminal Property**

17. In 1968, a predecessor of Hess purchased the Fuel Terminal Property.

18. Hess Corporation and its predecessors, including Amerada Hess Corporation (collectively with Hess Corporation, "Hess"), owned and operated the Fuel Terminal Property as a bulk storage and distribution facility for gasoline, fuel oil, kerosene, and other petroleum products.

19. Hess installed several underground storage tanks ("USTs") on the Fuel Terminal Property along the property boundary adjacent to the FRP Property. There is contamination at the Fuel Terminal Property from releases of Contaminants, including various petroleum products, from Hess's USTs.

20. Hess Corporation is the successor to, and is liable for the acts and omissions of, Hess.

21. Jemal purchased the Fuel Terminal Property from Hess in 2005.

22. Jemal owned and operated the USTs from 2005 until May 2007, when it removed the USTs from the Fuel Terminal Property.

23. Jemal remains the current owner of the Fuel Terminal Property.

24. The soil and groundwater at the Fuel Terminal Property remains contaminated with Contaminants.

**The FRP Property**

25. Adjacent to Nationals Stadium, the Anacostia River, and the Fredrick Douglas Memorial Bridge, the FRP Property is an outstanding location for residential and commercial development.

26. FRP is planning and building a mixed-use development at the FRP Property that includes residential, commercial, and office space.

27. The Contaminants that have migrated and are continuing to migrate to the FRP Property from the Fuel Terminal Property have interfered, and continue to interfere, with FRP's redevelopment of the FRP Property.

28. FRP has incurred, and will continue to incur, substantial expense to remediate the FRP Property to remove, dispose of, and/or treat the Contaminants that migrated onto the FRP Property from the Fuel Terminal Property.

**Count One**
**(Private Nuisance)**

29. FRP reincorporates paragraphs 1 through 28 by reference.

30. Contaminants, including petroleum, have migrated and are continuing to migrate from the Fuel Terminal Property into the soil and groundwater at the FRP Property.

31. The migration of Contaminants from the Fuel Terminal Property onto the FRP Property resulted from the Defendants' unreasonable acts and omissions.

32. The Defendants' contamination of the FRP Property has interfered with, and continues to interfere with, the physical condition of the FRP Property and FRP's use and enjoyment of the FRP Property.

33. The Defendants' acts and omissions have caused, and will continue to cause, FRP to sustain damages, including costs and expenses associated with remediation of the FRP Property and with delays in the development and leasing of the FRP Property.

34. FRP estimates damages as a direct and proximate result of Defendant's acts and omissions in excess of $12,000,000.

WHEREFORE, FRP requests that the Court: (i) enter a judgment against the Defendants, jointly and severally, for all damages sustained and to be sustained by FRP as a result of the contamination of the FRP Property, together with interest, costs, and attorneys' fees, to the extent allowed by law; (ii) enter a judgment awarding FRP injunctive relief and prohibiting Defendants from allowing further migration of Contaminants into the soil and groundwater from the Fuel Terminal Property onto the FRP Property; and (iii) grant all other relief the Court deems to be just and proper.

**Count Two**
**(Negligence)**

35. FRP reincorporates paragraphs 1 through 28 by reference.

36. The Defendants had and have a continuing duty to:

a. prevent discharges or releases of Contaminants into the soil and groundwater at the Fuel Terminal Property;

b. properly install, maintain, and repair USTs, above-ground storage tanks, and associated piping located at the Fuel Terminal Property;

c. investigate and remediate the discharge or release of Contaminants at the Fuel Terminal Property;

d. prevent and mitigate the migration of Contaminants from the Fuel Terminal Property onto the FRP Property; and

e. remediate Contamination resulting from discharges and releases at the Fuel Terminal Property.

37. The Defendants breached these duties by:

a. discharging and releasing Contaminants, or failing to prevent discharges or releases of Contaminants, into the soil and groundwater at the Fuel Terminal Property;

b. failing to properly install, maintain, and repair USTs, above-ground storage tanks, and associated piping located at the Fuel Terminal Property;

c. failing to investigate and remediate the discharge or release of Contaminants at the Fuel Terminal Property;

d. failing to prevent and mitigate the migration of Contaminants from the Fuel Terminal Property onto the FRP Property; and

e. failing to remediate Contamination resulting from discharges and releases at the Fuel Terminal Property.

38. As a direct and proximate result of the Defendants' breaches of duty, soil and groundwater at the FRP Property were and continue to be contaminated by Contaminants that migrated and which continue to migrate from the Fuel Terminal Property.

39. The Defendants' breaches of duty have caused, and will continue to cause, FRP to sustain damages, including costs and expenses associated with remediation of the FRP Property and with delays in the development and leasing of the FRP Property.

40. FRP estimates damages in excess of $12,000,000.

WHEREFORE, FRP requests that the Court: (i) enter a judgment against the Defendants, jointly and severally, for all damages sustained and to be sustained by FRP as a result of the contamination of the FRP Property, together with interest, costs, and

attorneys' fees, to the extent allowed by law; (ii) enter a judgment awarding FRP injunctive relief and prohibiting Defendants from allowing further migration of Contaminants into the soil and groundwater from the Fuel Terminal Property onto the FRP Property; and (iii) grant all other relief the Court deems to be just and proper.

**Count Three**
**(Trespass)**

41. FRP reincorporates paragraphs 1 through 28 by reference.

42. Acting with disregard for the impact on the FRP Property, the Defendants discharged and released Contaminants into the soil and groundwater at the Fuel Terminal Property.

43. The discharges were sufficiently close to the property boundary adjacent to the FRP Property that the Defendants knew or should have known that Contaminants would migrate onto the FRP Property as a result of their acts and omissions.

44. The Defendants knowingly failed, and continue to fail, to remediate the Fuel Terminal Property to prevent Contaminants from migrating onto the FRP Property.

45. The Contaminants that have migrated, and continue to migrate, into the soil and groundwater of the FRP Property as a result of the Defendants' acts and omissions have invaded, and continue to invade, FRP's interest in the exclusive possession of the FRP Property.

46. As a result, FRP has sustained, and will continue to sustain, damages, including costs and expenses associated with remediation of the FRP Property and with delays in the development and leasing of the FRP Property.

47. FRP estimates damages in excess of $12,000,000.

WHEREFORE, FRP requests that the Court: (i) enter a judgment against the Defendants, jointly and severally, for all damages sustained and to be sustained by FRP as a result of the contamination of the FRP Property, together with interest, costs, and attorneys' fees, to the extent allowed by law; (ii) enter a judgment awarding FRP injunctive relief and prohibiting Defendants from allowing further migration of Contaminants into the soil and groundwater from the Fuel Terminal Property onto the FRP Property; and (iii) grant all other relief the Court deems to be just and proper.

**Count Four**
**(Underground Storage Tank Management Act)**

48. FRP reincorporates paragraphs 1 through 28 by reference.

49. The Defendants each owned, were in control of, and had responsibility for the daily operation of USTs at the Fuel Terminal Property used for the storage, use, or dispensing of regulated substances (as defined in § 8-113.01(7), D.C. Code), including petroleum.

50. Releases of regulated substances, including petroleum, occurred from the Defendants' USTs at the Fuel Terminal Property.

51. Regulated substances released from USTs at the Fuel Terminal Property have migrated into the soil and groundwater at the FRP Property.

52. FRP is therefore aggrieved by the Defendants' violations of the UST Act.

53. FRP has provided 30 days' notice of these violations of the UST Act to: (i) the Office of Corporation Counsel for the District of Columbia, (ii) Jemal, and (iii) Hess Corporation.

54. The Mayor of the District of Columbia has not diligently prosecuted an action against the Defendants to obtain compliance with the requirements of the UST Act or regulations issued pursuant to the UST Act.

WHEREFORE, FRP requests that the Court: (i) enter a judgment directing the Defendants to abate further contamination of the FRP Property by regulated substances released at the Fuel Terminal Property; (ii) enter a judgment awarding FRP injunctive relief and prohibiting Defendants from allowing further migration of Contaminants into the soil and groundwater from the Fuel Terminal Property onto the FRP Property; (iii) award FRP its costs of litigation, including reasonable attorneys' fees and expert witness fees; and (iv) grant all other relief the Court deems to be just and proper.

Plaintiff demands a trial by jury on all issues so triable.

Florida Rock Properties, Inc.,
Plaintiff,
By Counsel

/s/ Roya Vasseghi
Roya Vasseghi (DC Bar # 10014058)
Robert J. Cunningham, Jr. (DC Bar # 1013935) -
*Pending Attorney Admission Ceremony*
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
Tel: (703) 790-1911
Fax: (703) 847-0463
rvasseghi@reesbroome.com
rcunningham@reesbroome.com
*Attorneys for Florida Rock Properties, Inc*

2097182